| | |
|---|---|
| LEE DEWANE WATTS #400816, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) NO. 3:20-cv-00405 |
| | ) |
| GRADY PERRY, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Lee Dewane Watts filed a pro se petition under 28 U.S.C. § 2254 for a writ of habeas corpus, challenging his state-court convictions for felony murder and especially aggravated robbery. He asserts that there was insufficient evidence to support his convictions and that trial counsel was ineffective for failing to obtain suppression of his confession. As explained below, Petitioner's first claim is procedurally defaulted without cause, and the state court reasonably rejected his second claim. Accordingly, Petitioner is not entitled to federal habeas relief.

**I.  Background**

"This case arises from the beating and robbery of the victim, [Petitioner's] mother, inside her home. The victim later died as a result of her injuries." State v. Watts, No. M2015-02404-CCA-R3-CD, 2017 WL 219108, at *1 (Tenn. Crim. App. Jan. 19, 2017). As a result of this incident, a Montgomery County grand jury indicted Petitioner for two counts of felony murder and one count of especially aggravated robbery. (Doc. No. 12-1 at 5–6). Petitioner proceeded to trial, and the TCCA summarized the evidence presented at trial as follows:

> Relevant to the victim's murder, the evidence . . . show[ed] that on the night the victim was beaten, [Petitioner] came and went from her apartment multiple times to obtain money to buy drugs. Several witnesses smoking crack cocaine with [Petitioner] that night testified that he left their group and said he was going to his

mother's house for more money. [Petitioner] and the victim were the only two people with access to her apartment and there were no signs of forced entry. [Petitioner] admitted to being at the victim's apartment sometime that night and eyewitnesses including the victim's neighbor saw [Petitioner] leaving the victim's apartment a short time before the victim was found by police and paramedics with serious injuries. The victim suffered blunt force trauma to her head, which caused her to lose brain function and die soon after. A hammer was found on the floor of her apartment, and medical experts testified that her injuries were consistent with being inflicted by a hammer. The victim's blood was found on the hammer, and [Petitioner's] blood was found on a shirt he was seen wearing the night before and the morning after the victim was beaten. The victim had several wounds classified by the medical examiner as "defensive." When questioned by police, [Petitioner] admitted to hitting the victim with the hammer multiple times, and he gave a written statement asking God for forgiveness.

Relevant to the robbery, witnesses testified that [Petitioner] left the group multiple times that night, saying he was going to the victim's apartment, and each time he returned with more money and purchased more drugs. In the past and in front of neighbors, [Petitioner] had discussed with the victim the fact that the victim had received a benefit check that [Petitioner] wanted the victim to share with him. A letter from the VA confirmed that the victim had received benefits of over $6,000. [Petitioner] also discussed with the victim her life insurance policy, and asked the victim for money several times in front of her neighbor. On the morning the victim was found and while she was being treated by paramedics, [Petitioner] asked the victim's neighbor for money as well. A hammer was found inside the victim's apartment with her blood on it, and she suffered life threatening injuries consistent with being beaten in the head by a hammer.

Watts, 2017 WL 219108 at *7–8.

The jury convicted Petitioner as charged. (Doc. No. 12-1 at 116–17). The court merged the murder convictions and sentenced Petitioner to life plus 25 years' imprisonment. (Id.). The Tennessee Court of Appeals (TCCA) affirmed, and the Tennessee Supreme Court denied Petitioner's application for permission to appeal. Watts, 2017 WL 219108, perm. app. denied May 18, 2017.

Petitioner filed a pro se post-conviction petition. (Doc. No. 12-18 at 4–14). The post-conviction court appointed counsel, and Petitioner filed an amended petition. (Id. at 41). The court held an evidentiary hearing (Doc. No. 12-19) and denied relief. (Doc. No. 12-18 at 43–54). The

2

TCCA affirmed, the Tennessee Supreme Court denied review, and the United States Supreme Court denied Petitioner's petition for a writ of certiorari. Watts v. State, No. M2018-01379-CCA-R3-PC, 2019 WL 3944009 (Tenn. Crim. App. Aug. 21, 2019), perm. app. denied Dec. 5, 2019; Watts v. Tennessee, 140 S. Ct. 2690 (2020).

**II.     Legal Standard**

Federal habeas relief for state prisoners is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Harrington v. Richter, 562 U.S. 86, 97 (2011). AEDPA establishes a demanding standard for granting federal relief on claims "adjudicated on the merits" in state court. 28 U.S.C. § 2254(d). Under AEDPA, such a claim cannot be the basis for federal relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id.

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" Hill v. Curtin, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting Lockyer v. Andrade, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Id. (quoting Harris v. Haeberlin, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it

3

"incorrect or erroneous"; instead, the federal court must find that the state court's application was "objectively unreasonable." Id. (quoting Wiggins v. Smith, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." Young v. Hofbauer, 52 F. App'x 234, 236 (6th Cir. 2002). State court factual determinations are unreasonable only "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." Pouncy v. Palmer, 846 F.3d 144, 158 (6th Cir. 2017) (quoting Matthews v. Ishee, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." Rice v. White, 660 F.3d 242, 250 (6th Cir. 2011) (citing Byrd v. Workman, 645 F.3d 1159, 1172 (10th Cir. 2011)).

Review of claims rejected on the merits in state court, however, is ordinarily only available to petitioners who "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the TCCA. Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." Wagner v. Smith, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted).

The procedural default doctrine is "an important 'corollary' to the exhaustion requirement," under which "a federal court may not review federal claims that . . . the state court denied based on an adequate and independent state procedural rule." Davila v. Davis, 137 S. Ct.

4

2058, 2064 (2017) (citations omitted). A claim also may be "technically exhausted, yet procedurally defaulted" where "a petitioner fails to present a claim in state court, but that remedy is no longer available to him." Atkins v. Holloway, 792 F.3d 654, 657 (6th Cir. 2015) (citing Jones v. Bagley, 696 F.3d 475, 483–84 (6th Cir. 2012)).

To obtain review of a procedurally defaulted claim, a petitioner must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" Middlebrooks v. Carpenter, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing Sutton v. Carpenter, 745 F.3d 787, 790–91 (6th Cir. 2014)). Cause may be established by "show[ing] that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Davila, 137 S. Ct. at 2065 (citations omitted). Prejudice requires a showing that the errors at trial worked to a petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Garcia-Dorantes v. Warren, 801 F.3d 584, 598 (6th Cir. 2015) (quoting Hollis v. Davis, 941 F.2d 1471, 1480 (11th Cir. 1991)) (internal quotation marks omitted). And the manifest-miscarriage-of-justice exception applies "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke v. Haley, 541 U.S. 386, 392 (2004) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

### III. Analysis

#### A. Claim 1—Insufficient Evidence

The indictment charged Petitioner with killing his mother on April 7, 2013, in the perpetration of crimes that involved exercising control over his mother's "cash." (Doc. No. 12-1 at 5–6). Petitioner first asserts that there was insufficient evidence to support his convictions because the proof established that his mother was beaten on April 7 but did not actually die until April 9, and because the State did not provide proof that he gained control of "cash," as opposed

5

Case 3:20-cv-00405   Document 16   Filed 02/03/23   Page 5 of 12 PageID #: 1479

to a check or life insurance policy. (Doc. No. 1-1 at 15–17). Respondent argues that this claim is procedurally defaulted. (Doc. No. 14 at 22–24). The Court agrees with Respondent.

Although Petitioner raised an insufficient-evidence claim on direct appeal, his theory of relief there was different from the theory of relief he presents here. To properly exhaust a claim, and therefore avoid a procedural default, a petitioner must present it to the state courts "under the same theory" that he later presents it to the federal habeas court. See Wagner, 581 F.3d at 417. This principle applies to insufficient-evidence claims just as it applies to any other habeas claim. See Barrett v. Parris, No. 20-5202, 2020 WL 4875315, at *6 (6th Cir. July 20, 2020) (denying certificate of appealability on ruling that habeas petitioner procedurally defaulted insufficient-evidence claim by not presenting it "under the same theory in state court"). On direct appeal, Petitioner argued that the State failed to present evidence corroborating his confession, as required by State v. Bishop, 431 S.W.3d 22 (Tenn. 2014). Watts, 2017 WL 219108, at *6; (Doc. No. 12-11 at 13–16 (direct appeal brief)). Here, however, Petitioner argues that the State's proof did not match up with the indictments. Because these two arguments are not the same, this claim is defaulted.[1]

Petitioner offers several reasons to excuse this default, but none succeed. First, he argues that the TCCA, on its own, should have identified and addressed the argument he makes here because the error was so "blatant." (Doc. No. 1-1 at 14). But raising grounds for relief on appeal

---

[1] The Court notes that, even if Petitioner made the same insufficient-evidence argument here that he made on direct appeal, it would not be a viable ground for federal habeas relief because Bishop's corroboration rule is one of state law, rather than federal law. See Campbell v. Genovese, No. 3:20-CV-00394, 2021 WL 704315, at *9 (E.D. Tenn. Feb. 23, 2021) (finding a Tennessee petitioner's claim of insufficient corroboration to be non-cognizable on federal habeas review because "[t]he Constitution does not demand that states require corroboration of a criminal defendant's extrajudicial admissions") (citing United States v. Brown, 617 F.3d 857, 862 (6th Cir. 2010); Williams v. Chapleau, No. 97-6015, 2000 WL 32015, at *4 (6th Cir. Jan. 4, 2000)); see also Powell v. Berghuis, 560 F. App'x 442, 449 (6th Cir. 2013) ("[A] state law claim disguised as a [claim of insufficient evidence under Jackson v. Virginia, 443 U.S. 307 (1979)] . . . is not cognizable on federal habeas review.") (citing Sanford v. Yukins, 288 F.3d 855, 862 (6th Cir. 2002)).

6

is the function of counsel, not the court. A defendant generally bears "the risk of attorney error that results in a procedural default." Carrier, 477 U.S. at 488. "The cause standard in procedural default cases" therefore "requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." Hargrave-Thomas v. Yukins, 374 F.3d 383, 388 (6th Cir. 2004) (internal citations and quotation marks omitted). "Such factors may include 'interference by officials,' attorney error rising to the level of ineffective assistance of counsel, and 'a showing that the factual or legal basis for a claim was not reasonably available.'" Id. (quoting McCleskey v. Zent, 499 U.S. 467, 493 (1991)). Petitioner does assert ineffective assistance of counsel as a cause ground, and that assertion is addressed below. But the factual and legal basis for his defaulted insufficient-evidence claim were available to counsel, and there is no sign of interference by State officials in the record. Accordingly, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Broom v. Mitchell, 441 F.3d 392, 404 (6th Cir. 2006) (quoting Carrier, 477 U.S. at 486) (footnote omitted).

Turning to Petitioner's assertion of ineffective assistance, he attributes the default of this claim to attorney errors during trial-court level proceedings, on direct appeal, and during post-conviction proceedings. (Doc. No. 1-1 at 7, 14; Doc. No. 15 at 3–5). Although the ineffective assistance of counsel at trial or on direct appeal can "can constitute cause for a procedural default," Hodges v. Colson, 727 F.3d 517, 530 (6th Cir. 2013) (quoting Carrier, 477 U.S. at 492), "'an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.'" Id. (quoting Edwards v. Carpenter, 529 U.S. 446, 453 (2000)). That is the case here, as Petitioner did not exhaust a claim of trial or appellate ineffectiveness related to his defaulted insufficient-evidence claim. See Watts, 2019 WL 3944009,

7

at *3 (asserting on post-conviction appeal only that trial counsel failed to file a motion to suppress his recorded police interview). And ineffective assistance of post-conviction counsel can only act as "cause to overcome the default of a single claim—ineffective assistance of trial counsel." Davila, 137 S. Ct. at 2062–63 (discussing Martinez v. Ryan, 566 U.S. 1 (2012); Trevino v. Thaler, 569 U.S. 413 (2013)); see Johnson v. Lazaroff, No. 17-3405, 2017 WL 8931933, at *3 (6th Cir. Nov. 21, 2017) ("Martinez and Trevino cannot be invoked to excuse the default of an[] . . . insufficiency-of-the-evidence claim."). Petitioner, accordingly, cannot rely on ineffective assistance of counsel to excuse his default.

Finally, Petitioner argues that a "manifest injustice" will result if this claim is not considered on the merits. (Doc. No. 1-1 at 14). To overcome a default based on a manifest miscarriage of justice, a petitioner must establish that "a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke, 541 U.S. at 392 (quoting Carrier, 477 U.S. at 496). This pathway to review "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" McQuiggin v. Perkins, 569 U.S. 383, 394–95 (2013) (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). Here, Petitioner does not present any new evidence of his innocence, so this exception to the procedural default doctrine does not apply.

To sum up, Petitioner's insufficient-evidence claim is procedurally defaulted, and he has not provided a basis to overcome this default. This claim is not subject to further review.

### B. Claim 2—Ineffective Assistance of Counsel

Next, Petitioner asserts that trial counsel was ineffective for failing to obtain suppression of his confession. (Doc. No. 1-1 at 16–17). The TCCA correctly identified the federal standard

8

governing this claim, as set forth in Strickland v. Washington, 466 U.S. 668 (1984), before rejecting the claim on the merits. See Watts, 2019 WL 3944009, at *4.

Under Strickland, a petitioner must show (1) deficient performance and (2) prejudice to the defendant. Knowles v. Mirzayance, 556 U.S. 111, 124 (2009) (citing Strickland, 466 U.S. at 687). Counsel's performance is deficient where it falls "below an objective standard of reasonableness." Strickland, 466 U.S. at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Further, when a petitioner raises an exhausted claim of ineffective assistance in a federal habeas petition, "[t]he pivotal question" is not "whether defense counsel's performance fell below Strickland's standard," but "whether the state court's application of the Strickland standard was unreasonable." Harrington, 562 U.S. at 101. This amounts to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 571 U.S. 12, 15 (2013) (quoting Cullen v. Pinholster, 563 U.S. 170, 190 (2011)).

Here, Detective Eric Ewing interviewed Petitioner on April 12, 2013, and the jury viewed a recording of this interview at trial. In this interview, Petitioner initially denied hurting his mother. However, Ewing testified that during a restroom and cigarette break, Petitioner confessed to hitting his mother with a hammer. And when the recorded interview picked back up, Petitioner repeated

9

his confession and gave a written statement asking for forgiveness and stating "that his mother had never loved him or met his needs as a child." Watts, 2017 WL 219108, at *5.

At the post-conviction hearing, Petitioner testified that prior to making this confession, he said, "Detective Ewing, I would like to stop with the questioning, I need some legal guidance. I would like to talk to my pastor for some legal advice." (Doc. No. 12-19 at 15). Petitioner argues that that trial counsel should have filed a motion to suppress because police did not stop questioning him after he invoked his right to counsel. (Doc. No. 1-1 at 16–17).

The TCCA rejected this claim, concluding that counsel was not ineffective because a motion to suppress Petitioner's confession on this basis would not have been successful:

> We agree with the post-conviction court that the petitioner's request to speak with his pastor for legal advice was not an unequivocal invocation of his right to counsel. See Davis v. U.S., 512 U.S. 452, 459 (1994) (holding that a suspect "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney"); State v. Climer, 400 S.W.3d 537, 562 (Tenn. 2013). Here, the petitioner said, "I would like to stop with the questioning, I need some legal guidance. I would like to talk to my pastor for some legal advice." The petitioner's telling the officers that he wished to seek legal advice from his pastor rendered the statement ambiguous. Because the petitioner did not unequivocally invoke his right to counsel, no basis existed to suppress the statement, even if trial counsel had moved to do so. The petitioner has thus failed to show that trial counsel performed deficiently by failing to seek suppression of the statement or that he was prejudiced by trial counsel's conduct.

Watts, 2019 WL 3944009, at *5.

This ruling was a reasonable application of clearly established federal law. "Since the watershed decision in Miranda, a criminal suspect has enjoyed the right to the assistance of counsel during a custodial interrogation as a safeguard of his Fifth Amendment privilege against self-incrimination. One consequence of this right is that, if an individual under police questioning 'states that he wants an attorney, the interrogation must cease until an attorney is present.'" Rogers v. Kerns, 485 F. App'x 24, 30 (6th Cir. 2012) (quoting Miranda v. Arizona, 384 U.S. 436, 474

(1966)). As the TCCA noted, however, the standard set by the Supreme Court for invoking the right to counsel requires a suspect to "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." England v. Hart, 970 F.3d 698, 707 (6th Cir. 2020) (quoting Davis, 512 U.S. at 459). The suspect must "make some affirmative 'statement' or 'request' whose ordinary meaning shows his desire to deal with the police through counsel." Id. (quoting United States v. Suarez, 263 F.3d 468, 483 (6th Cir. 2001)). And the "through counsel" aspect of the request is important, as Miranda's protections are "based on the unique role the lawyer plays in the adversary system of criminal justice in this country." Fare v. Michael C., 442 U.S. 707, 719 (1979). The Supreme Court has accordingly explained that a suspect does not properly invoke the right to counsel by asking to speak to a non-lawyer such as "a probation officer, a clergyman, or a close friend." Id. at 722; see also Rogers, 485 F. App'x at 31 ("The Supreme Court has not held that the request to speak to a parent or grandparent is tantamount to a request for counsel.") (quoting Smith v. Scribner, 384 F. App'x 672, 673 (9th Cir. 2010)).

At the post-conviction hearing, trial counsel testified that he watched Petitioner's pre-confession statement to Detective Ewing "over and over again and thought about it from every angle," but ultimately concluded that Petitioner's request to talk to his pastor—even if the purpose of this request was to get legal advice—was not sufficient to invoke the right to counsel. (Doc. No. 12-19 at 31–32). Counsel's conclusion was consistent with federal law. See Michael C., 442 U.S. at 722 ("It is this pivotal role of legal counsel that justifies the per se rule established in Miranda, and that distinguishes the request for counsel from the request for a probation officer, a clergyman, or a close friend."). It was therefore reasonable for the TCCA to conclude that counsel was not ineffective for declining to seek suppression of Petitioner's confession on this basis. See Coley v.

11

Bagley, 706 F.3d 741, 752 (6th Cir. 2013) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.") (citations omitted).

IV. **Conclusion**

For these reasons, Petitioner is not entitled to relief under Section 2254 and this case will be dismissed. Because this is a "final order adverse to" Petitioner, the Court must grant or deny a certificate of appealability (COA). Habeas Rule 11(a). A COA requires "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack v. McDaniel, 529 U.S. 473, 484 (2000)). "If the petition [is] denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" Dufresne v. Palmer, 876 F.3d 248, 253 (6th Cir. 2017) (quoting Slack, 529 U.S. at 484).

For the reasons stated throughout the Court's analysis, the Court concludes that Petitioner has not satisfied these standards and will deny a COA.

An appropriate Order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE